Argued September 7, affirmed September 19, rehearing denied October 23, 1917.

## BALFOUR, GUTHRIE & CO. v. KNIGHT.*

(167 Pac. 484.)

**Names—Doing Business Under Assumed Name—Certificate.**

1. Under Laws of 1913, Chapter 154, Section 1, providing that no person or persons shall do business under an assumed name, unless such person or all such persons conducting such business or having an interest therein shall file a certificate, and that it shall be executed and acknowledged by the party or parties conducting the business or having an interest therein, the certificate must be signed and acknowledged by all the persons interested in the business.

**Frauds, Statute of—Guaranty—Expressed Consideration.**

2. Future credit to be extended to the debtor is a sufficient consideration for and is clearly expressed in a guaranty by R. to B. of payment up to a certain amount of all indebtedness which shall be incurred by G. to B. for merchandise purchased by G. from R. within a certain period.

[As to contracts of guaranty, see note in 105 Am. St. Rep. 502.]

---

*The question as to what names or designations are within the statute requiring the filing of a certificate giving information regarding a business conducted under an assumed or fictitious name, or a designation not showing the names of persons interested, is discussed in a note in L. R. A. 1916D, 355.

Authorities passing on the question of requiring filing of certificate setting forth names of members of firm, unless business is transacted under partnership name which includes the true real name of at least one of the members, are collated in a note in L. R. A. 1917B, 697.

REPORTER.

3.   There is not the necessary notice of acceptance of a guaranty, there being no communication between guarantor and guarantee, but the request for a guaranty being to the debtor, and he taking the guaranty to the guarantee, his mere carrying it not constituting him agent of the guarantor.

From Multnomah: CALVIN U. GANTENBEIN, Judge.

Department 1.    Statement by MR. JUSTICE BENSON.

On January 7, 1916, plaintiffs filed their complaint in this action wherein they allege that Robert Balfour, Archibald Williamson, John Lawson, W. J. Burns, Alexander Baillie, C. J. Williamson, A. W. Blackie, and T. J. Whitson, plaintiffs herein, are copartners, under the firm name of Balfour, Guthrie & Company. Paragraph 2 of the complaint reads as follows:

"That said copartners, above named in paragraph 1 hereof, and conducting said business of and having said interest in said Balfour, Guthrie & Company, as aforesaid, did, by one of said copartners, to wit: W. J. Burns, who was then and there a resident copartner and had an interest in and was conducting and intending to conduct said business in said county and state, duly and regularly sign and execute a certain certificate in which there was then and there set forth the name and style under which said copartners were to conduct said business, and the true and real names and postoffice addresses of such and all of said copartners having an interest in and conducting and intending to conduct said business; that said certificate was duly and regularly executed and acknowledged by said copartner, W. J. Burns, before a notary public in and for the State of Oregon, so as to entitle the same to be recorded, and said certificate was filed in the office of the county clerk of Multnomah County, said state, on the thirteenth day of June, 1913, and recorded in volume one of 'Record of Assumed Names' at page twenty-one thereof, records of said county and state."

This is followed by allegations to the effect that on April 10, 1913, defendant executed a written guaranty in the following form:

"Balfour, Guthrie & Company,
                    "Portland, Oregon, April 10, 1913.
"To Messrs. Balfour, Guthrie & Co.,
        Board of Trade Bldg., City.
    "Gentlemen:—I guarantee payment of all indebtedness which shall be incurred by G. R. Knight, 328 N. 17th Street, City, in your favor for merchandise purchased by him from you any time or times within nine months from the date hereof, provided, however, my liability shall not exceed the sum of Twenty-five Hundred Dollars.
                    "(Signed)    R. B. KNIGHT."

It is alleged that plaintiffs and defendant mutually accepted such guaranty and, relying thereon, plaintiffs sold merchandise to G. R. Knight for which he agreed to pay $1,746.79; that he failed to pay for the same, except the sum of $104.33; that defendant was duly notified of the default of G. R. Knight and that demand for the payment has been made upon the guarantor who has refused the same. A prayer for judgment follows.

Defendant answers paragraph 2 of the complaint as follows:

"Answering paragraph 2, defendant admits that W. J. Burns filed in the office of the county clerk of Multnomah County, State of Oregon, on the 30th day of June, 1913, a certain instrument in writing in words and figures as follows: ASSUMED NAME OF BALFOUR, GUTHRIE & Co.   I, Walter J. Burns, resident partner of the firm of Balfour, Guthrie & Co., a partnership doing business under the name of Balfour, Guthrie & Co., which business name has been in use for a long time prior to the taking effect of the Act of the legislature of the State of Oregon entitled 'An Act Regulating the Conduct of Business under an assumed

Name,' etc., filed in the office of the Secretary of State, February 25, 1913, hereby certify that the following is a list of the persons having an interest in said business, and their addresses: Robert Balfour, London, England; Alexander Baillie, Seattle, Washington; Archibald Williamson, London, England; C. J. Williamson, Liverpool, England; John Lawson, San Francisco, Calif.; T. J. Whitson, Liverpool, England; W. J. Burns,.Portland, Oregon; and that the postoffice address of the said company is Board of Trade Building, Portland, Oregon.

"(Sgd.)   WALTER J. BURNS."

"State of Oregon,
County of Multnomah,—ss.

"Be it remembered, that on this, the 30th day of June, 1913, before me, the undersigned, a notary public in and for the said county and state, personally appeared the above-named Walter J. Burns, who is personally known to me to be the individual described in and who executed the foregoing instrument and acknowledged to me that he executed the same freely and voluntarily.

"In testimony whereof, I have hereunto set my hand and notarial seal the day and year last above written.

"(Notarial Seal)        (Sgd.)   JOHN BAIKIE,
"Notary Public for the State of Oregon.

"Filed June 30th, 1913.   John B. Coffey, Clerk. Moore, Deputy."

This is followed by denials of the remainder of the complaint and an affirmative answer which is not necessary to the discussion here. A trial being had, the plaintiffs introduced evidence and rested their case, whereupon defendant moved for a judgment of nonsuit upon several grounds, among which are: (1) The plaintiffs have not proved their compliance with the provisions of Chapter 154 of the Laws of Oregon for 1913; (2) that they have not proved any valid contract of guaranty, because the writing does not express the consideration; and (3) that there has been no proof of

notice to the guarantor of acceptance of the guaranty by plaintiffs.

The trial court allowed the motion for judgment of nonsuit, basing its action upon the last-mentioned ground.   Plaintiffs appeal.   AFFIRMED.

For appellants there was a brief over the names of *Mr. Robert R. Rankin* and *Mr. D. N. Mackay,* with an oral argument by *Mr. Rankin.*

For respondent there was a brief over the names of *Mr. John Dichburn* and *Mr. William P. Hubbard,* with an oral argument by *Mr. Dichburn.*

MR. JUSTICE BENSON delivered the opinion of the court.

1. Section 1 of Chapter 154, Laws of 1913, reads thus:

"No person or persons shall hereafter carry on, conduct or transact business in this state under any assumed name or under any designation, name or style, corporate or otherwise, other than the real and true name or names of the person or persons conducting such business or having an interest therein, unless such *person* or *all* of such *persons* conducting said business or having an interest therein, shall file a certificate in the office of the county clerk of the county or counties in which said business is to be conducted, which certificate shall set forth the designation, name or style under which said business is to be conducted, and the true and real name or names of the party or parties conducting or intending to conduct the same, or having an interest therein, together with the postoffice address or addresses of said person or persons.   Such certificate shall be executed and acknowledged by the *party* or *parties* conducting, or intending to conduct said business, or *having an interest therein,* before an officer authorized to take acknowledgment of deeds."

We are of the opinion that this act very clearly demands that the certificate therein prescribed shall be signed and acknowledged by all of the persons interested in the business. The case of *Rennie* v. *Stelter* (Mich.), 162 N. W. 997, decided in May of the current year, is relied upon by plaintiffs to oppose this view. This was a case in which the plaintiffs were doing business under the firm name of "Rennie Coal & Supply Co.," and the final conclusion of the opinion of the court is based upon the fact that the firm name contains the surname of all the parties interested in the business, who were three brothers by the name of Rennie. But if the case were directly in point as to the basis of the decision, it could not change our conclusion, since the language of the Michigan statute is different from ours and not nearly so clear upon the point. Section 5 of our statute reads as follows:

"No person or persons carrying on, conducting or transacting business as aforesaid, or having any interest therein, shall hereafter be entitled to maintain any suit or action in any of the courts of this state without alleging and proving that such person or persons have filed a certificate as provided for in Section 1, and failure to file such certificate shall be *prima facie* evidence of fraud in securing credit": Section 5, Chapter 154, Laws 1913.

The complaint alleges compliance with the provisions of the act, but the answer, as well as the evidence, discloses that the certificate is executed and acknowledged not by all of the persons interested in the business, but by W. J. Burns only. There is no doubt but that the resident partner, supplied with the proper powers of attorney, might execute the certificate for his associates in such manner as to make it their act, but he has not done so.

2. There is no merit in the contention that the contract of guaranty is void for want of expressed consideration. The authorities are practically agreed that a future credit to be extended to the debtor is a sufficient consideration and is clearly expressed in a writing similar to the one upon which this action is based.

3. The third ground of defendant's motion for a judgment of nonsuit is well taken. The evidence upon this point is brief and is substantially as follows: Mr. Allen, the credit man of plaintiffs, had a conversation with G. R. Knight, who was engaged in conducting a feed store, in which the latter was asked to furnish a guaranty for future credit. Among others, Mr. Allen expressed a willingness to accept the name of defendant, who is the father of G. R. Knight, upon such guaranty and thereupon returned to his own office and prepared the instrument in controversy. He sent it to G. R. Knight by a messenger and he in turn took it to his father and asked him to sign it. After a day or two defendant signed the instrument and returned it to his son who delivered it to plaintiff. There is not a word in the testimony to show that the defendant ever had any information indicating that plaintiffs had accepted his offer and were acting upon it. The case therefore falls within the rule announced in *Rothchild Bros. v. Lomax,* 75 Or. 395, 398 (146 Pac. 479), in which is followed the doctrine announced in *Davis Sewing Machine Co. v. Richards,* 115 U. S. 524, 527 (29 L. Ed. 480, 6 Sup. Ct. Rep. 173), thus:

"A contract of guaranty, like every other contract, can only be made by the mutual assent of the parties. If the guaranty is signed by the guarantor at the request of the other party, or if the latter's agreement to accept is contemporaneous with the guaranty, or if the receipt from him of a valuable consideration, however small, is acknowledged in the guaranty, the mutual as-

sent is proved, and the delivery of the guaranty to him or for his use completes the contract.   But if the guaranty is signed by the guarantor without any previous request of the other party, and in his absence, for no consideration moving between them, except future advances to be made to the principal debtor, the guaranty is in legal effect an offer or proposal on the part of the guarantor, needing an acceptance by the other party to complete the contract.''

Counsel for appellant urges upon our attention, with special force, the cases of *Davis* v. *Wells,* 104 U. S. 159 (26 L. Ed. 686), and *United States Fidelity Co.* v. *Riefler,* 239 U. S. 17 (60 L. Ed. 121, 36 Sup. Ct. Rep. 12), contending that they support the theory that the instrument in question is a requested guaranty which obviates proof of acceptance and that it is an absolute guaranty assuming an obligation in present words and, as such, requires no notice of acceptance.   The first of these cases is an action upon an instrument in writing which reads thus:

''For and in consideration of one dollar to us in hand paid by Wells, Fargo & Co., (the receipt whereof is hereby acknowledged) we hereby guarantee unto them, the said Wells, Fargo & Co., *unconditionally and at all times,* any indebtedness of Gordon & Co., etc.''

The opinion holds that the acknowledgment of the receipt of one dollar is conclusive evidence of acceptance.   It is also held that the words of the instrument which we have italicized constitutes a waiver of notice of acceptance.   From page 166 of the same opinion we quote as follows:

''If the guaranty is made at the request of the guarantee, it then becomes the answer of the guarantor to a proposal made to him, and its delivery to or for the use of the guarantee completes the communication between them and constitutes a contract.''

In the present case, however, the record is silent as to any request made to the defendant by plaintiffs or any communication between him and plaintiffs. The request was made to the debtor and the writing was delivered by him to the plaintiffs.

The case of the *United States Fidelity etc. Co.* v. *Riefler,* 239 U. S. 17 (60 L. Ed. 121, 36 Sup. Ct. Rep. 12), is one in which the guaranty was an indemnity bond, under seal, and the opinion holds that a bond under seal carries its complete obligation with the paper and if it is in fact accepted by the obligee, notice of such acceptance is not necessary. It is urged that the son in delivering the guaranty to plaintiffs acted as the agent of his father. There is nothing in the record from which such a conclusion can be reached. In *Duncan & Shumate* v. *Heller,* 13 S. C. 94, 96, defendant wrote a letter to a creditor of his sister asking for delay in enforcing payment of her debt and agreeing to see that the debt was paid. The letter was delivered to the creditor by the sister and in regard to the same contention the court there says:

"It is argued here that even if notice to the appellant that his offer to guarantee would be accepted, was necessary, that such notice was in fact given to the appellant through his agent, Elizabeth Heller. A sufficient answer to this is that there is no evidence whatever that she was the agent for the appellant. The mere fact that she carried the letter to the plaintiffs cannot be sufficient to make her the agent for the appellant, for if so, in most if not all cases the rule which requires notice of the acceptance of the guaranty would be evaded, as the principal debtor ordinarily delivers the letter of guaranty to the person to whom it is addressed, and he of course knows whether the guaranty is accepted and acted upon. If, therefore, the mere fact that he carries the letter is sufficient to constitute him the agent of the guarantor, so that

his knowledge will be imputed to the guarantor also, then the rule which requires notice to the guarantor, and which is solely for his benefit, so as to enable him to take such steps as he may deem necessary to indemnify himself against the risk which he has assumed, becomes practically nugatory."

We conclude that the judgment of nonsuit was properly granted and is therefore affirmed.

                    AFFIRMED.   REHEARING DENIED.

MR. CHIEF JUSTICE McBRIDE, MR. JUSTICE BURNETT and MR. JUSTICE HARRIS concur.