## LADD & BUSH v. HAYES.
### No. 9069.

Circuit Court of Appeals, Ninth Circuit.
June 29, 1939.

W. H. Lawrence, of San Francisco, Cal., and Oscar Hayter, of Dallas, Or.

(E. L. Crawford, of Salem, Or., of counsel), for appellant.

Elystus L. Hayes and George M. Naus, both of San Francisco, Cal., for appellee.

Before DENMAN, MATHEWS, and HEALY, Circuit Judges.

HEALY, Circuit Judge.

Suit on a contract of guaranty was brought by appellant, Ladd & Bush, an Oregon banking corporation, against appellee, Hayes, a citizen and resident of California. The cause was tried without a jury and judgment given in appellee's favor.

The contract, signed by appellee on April 14, 1930, is as follows:

"Guaranty of Indebtedness. In consideration of One Dollar and of present and future loans and extensions of credit to L. O. Herrold, hereinafter referred to as the 'Debtor', by Ladd & Bush, bankers of Salem, Ore., hereinafter referred to as the 'Bank', the undersigned hereby guarantees unto the Bank, its successors and assigns, the prompt payment of all moneys which may be due or owing now or at any time hereafter to the Bank from the Debtor, not exceeding, however, the total sum of Thirty-five Thousand Dollars. This guaranty shall be a continuing guaranty to the extent of said sum.

"The undersigned further agrees that the Bank may make, alter, and renew such contracts with the Debtor as may be agreed upon between it and the Debtor and may deal with the Debtor as it may elect without diminishing, or discharging the liability of the undersigned; that no payment made by or on behalf of the undersigned to the Bank shall discharge or diminish the continuing liability of the undersigned, unless such payment shall be accompanied by written notice to the Bank that it is made for the purpose of liquidating such liability; that the Bank may liquidate any securities which it may hold, and apply the proceeds as it may elect, but may at its option proceed directly against the undersigned at once upon the default of the Debtor and before first proceeding against the Debtor or liquidating any securities held by it. The amount realized from any securities or from any compositions, dividends, or payments made by or on behalf of the Debtor shall not discharge or diminish the liability of the undersigned, except

as it may discharge the entire debt or reduce it below the amount of this guaranty. "The undersigned hereby waives protest, demand, notice of non-payment, and any and all notices of every kind, and consents to any and all renewals, forbearance, and extensions of time. This guaranty shall cover any indebtedness or liability of the Debtor to the Bank, whether primary or secondary, direct or indirect. Any account stated or settled by or between the Debtor and the Bank, shall be conclusive upon the undersigned. This guaranty shall continue in force and effect until terminated by notice in writing received by the Bank; Provided, however, that such termination shall not affect indebtedness incurred by the Debtor prior to the receipt by the Bank of notice of termination. In the event that this guaranty is signed by more than one person, the obligations of the signers shall be joint and several.

"Dated at Salem, Oregon, April 14th, 1930.
"[Seal]          (signed)  J. O. Hayes."

The suit was filed November 14, 1936. The complaint was later amended. The amended pleading alleges that while the contract was in force the principal debtor, Herrold, executed two notes payable to appellant bank. The first, dated May 13, 1932, and due five months thereafter, was in the sum of $24,470.49, with interest at 8%. A payment of $10,907.80 was made on this note by Herrold on December 3, 1932. The second note was for $6,298.95, with interest at like rate. It was dated November 25, 1932 and was due on demand. Judgment was prayed for the amount of the unpaid balance of these notes in the sum of $19,861.64.[1]

The answer set up the defenses (1) that the delivery of the guaranty was subject to a condition which never occurred; (2) that there was no consideration to support the guaranty; (3) that no binding contract of guaranty was made for the reason that no notice of acceptance was ever conveyed to appellee; (4) that the action is barred by the statute of limitations; (5) that appellee is not liable because of material alterations made in the obligations of the

principal debtor; and (6) that the notes in suit were paid.

▮▮▮ The trial court made findings of fact sustaining defenses (2), (3) and (4).[2] There is no doubt that recovery on account of the larger note, which matured October 13, 1932, is barred by limitation. Calif. Code of Civil Procedure § 337; Calif.Civil Code § 2807.[3] While it is contended that appellee waived the statute or is estopped to assert it, the weight of the evidence is to the contrary. Whether recovery on account of the demand note of November 25, 1932 is also barred we do not determine, since we have concluded that the judgment must be affirmed on the ground that appellant's failure to notify appellee of the acceptance of the guaranty is a good defense.

For many years prior to the execution of this guaranty appellee had been a customer of appellant. Herrold, the principal debtor, was a construction contractor and a farmer, who also did business with the bank. On two occasions prior to 1930 appellee guaranteed loans made to Herrold by appellant. The first was a one-year guaranty, made in 1924, covering generally all loans to Herrold on construction contracts, not exceeding $25,000. The other, made in 1929, was a $20,000 guaranty covering extensions of credit to Herrold. This guaranty was on the same printed form as the one involved here, but appellee testified that written across the face of it was the limitation "good only for road contract work". The 1929 guaranty was not introduced in evidence. Appellee's testimony is that the contract in connection with which it was given was a profitable one and he was not called on to make good under it.

Concerning the guaranty in suit, the proof is that Herrold procured the form from the bank and took it to appellee at San Jose, California, where it was signed. Herrold then delivered it to appellant. There was no communication between the bank and appellee relative to the matter. Appellee claimed on the trial that it was understood between himself and Herrold that liability on it was to be limited to loans in connection with a prospective road contract, which Herrold did not ob-

---

[1] Concededly the guaranty was terminated by written notice given in December, 1932.

[2] No findings were made as to defenses (5) and (6). Although the court did make

a finding under defense (1), it is plainly insufficient to support the judgment.

[3] The applicable statute of limitations is concededly that of the forum. The time limit is four years, and the statute is not tolled by part payment alone.

tain. At the time of the execution of this guaranty Herrold was indebted to the bank in at least the sum of $25,500. After that time and on April 17, 1930 the bank made a new loan to Herrold in the amount of $1500, and on May 16, 1930 another new loan was made in the amount of $4000. Thereafter the total indebtedness was carried forward by various renewals and extensions, culminating in the notes set out in the complaint.

Appellee testified that the first notification he had concerning the acceptance of the guaranty was in June or July of 1932, at which time he called at the bank on other business and was asked "How about the guaranty?" Appellee immediately denied liability under it, asserting that it was to become effective only upon Herrold's getting a certain road contract which he never obtained. There were further negotiations between the parties, not material to the issue here, but appellee at no time admitted liability.

The contract, while signed by appellee in California, was delivered to the bank in Oregon, and there the loans allegedly guaranteed were made. The Oregon law clearly governs the point which we have indicated is decisive of the case. As to this the parties themselves are in agreement.

The question whether notice of acceptance is necessary in contracts of guaranty has induced much confusion in the cases.[4] A study of the Oregon authorities convinces us that, under facts comparable with those in the case at bar, the law of that state requires notice of acceptance as a necessary incident to the formation of the contract. Rothchild Bros. v. Lomax, 1915, 75 Or. 395, 146 P. 479; Balfour, Guthrie & Co. v. Knight, 1917, 86 Or. 165, 167 P. 484; Marshall-Wells Co. v. Tenney, 1926, 118 Or. 373, 244 P. 84, 45 A.L.R. 1382; Vancouver Nat. Bank v. McCredie, 1931, 135 Or. 227, 295 P. 452; Public Fire Ins. Co. v. Weatherly, 1934, 148 Or. 407, 36 P.2d 989. The Oregon rule stems from the holdings of the Supreme Court of the United States in Davis v. Wells, Fargo & Co., 104 U.S. 159, 26 L.Ed. 686, and Davis Sewing Machine Co. v. Richards, 115 U.S. 524, 6 S.Ct. 173, 29 L.Ed. 480.[5] See particularly Rothchild Bros. v. Lomax, supra, and Vancouver Nat. Bank v. McCredie, supra.

Appellant contends that the Oregon rule was changed by Marshall-Wells Co. v. Tenney, supra. A suggestion to that effect appears in an article in the Oregon Law Review, written in 1930.[6] But a careful study of the Tenney case discloses that it is clearly distinguishable on its facts both from the case here and from the other Oregon decisions above cited which precede or follow it. In the opinion in the Tenney case the earlier Oregon decisions are not referred to or cited, and the Tenney case in turn is neither cited nor referred to in the later decisions in Vancouver Nat. Bank v. McCredie, supra, and Public Fire Ins. Co. v. Weatherly, supra.

In Vancouver Nat. Bank v. McCredie, supra, suit was brought by the plaintiff bank against six defendants to recover on a guaranty contract which they had signed as co-guarantors. The guaranty stated that in consideration of loans to be made to a certain lumber company, the obligors guaranteed payment of the lumber company's notes in a sum not to exceed $15,000. It was found by the trial court that the plaintiff bank "accepted said guaranty to the amount of $10,000 and agreed to loan such amount upon the same together with such additional security as it might obtain." Thereafter the bank advanced the sum stated. Although granting judgment for the plaintiff the trial court dismissed the cause as to two of the defend-

---

[4] The confusion, according to Prof. Williston, has resulted in large measure from the failure to recognize that such contracts may be, and usually are, of a unilateral nature. "This misconception," says Williston, "lies at the bottom of the widely followed but specious distinction between a promise to guarantee future advances as an 'absolute guaranty' requiring no notice of acceptance and the 'mere offer' to guarantee, with the necessity for such notice." 1 Williston on Contracts, Rev. Ed., p. 198.

But even in the case of unilateral contracts of guaranty, notice of acceptance (i. e., of the performance of the act) may be required under certain circumstances, as for example, where the offeror has no adequate means of ascertaining with reasonable promptness and certainty that the offeree has performed. See Restatement of the Law of Contracts, § 56.

[5] For an early criticism of the rule, see Wilcox v. Draper, 12 Neb. 138, 10 N.W. 579, 41 Am.Rep. 763.

[6] Howard, "Restatement of the Law of Contracts with Oregon Notes," 9 Oregon Law Review 444, 451.

ants who had not been notified of the acceptance of the guaranty. On appeal the Supreme Court affirmed the dismissal as to the two defendants, saying "it will also be observed that neither Hugh nor W. H. McCredie had any information of the acceptance of the offer. It is agreed that they executed the instrument as volunteers without being paid any consideration whatever, and that the instrument was not a requested guaranty. It follows from our holdings in Balfour, Guthrie & Co. v. Knight * * * and Rothchild Bros. v. Lomax * * * that a notice of acceptance was necessary before a contract of guaranty was effected which bound Hugh and W. H. McCredie." [135 Or. 227, 295 P. 453.]

■ Appellant bank further contends that the present case falls within an exception to the rule requiring notice, in that the guaranty was requested by the bank.[7] The trial court found that no request was made by the bank for the giving of the guaranty, and this finding is supported by the evidence. The record shows that, although Herrold procured the form of the contract from the bank, he was not an agent of the bank in securing the signature of appellee, but was acting on his own initiative. There is no evidence of any communication between the bank and appellee with respect to the signing of the guaranty. No agent of the bank was present when it was signed. Under similar circumstances the Oregon court has held that there was no such request as would excuse the giving of notice. See Balfour, Guthrie & Co. v. Knight, supra.

In Balfour, Guthrie & Co. v. Knight, supra, there was involved an action upon the following guaranty: "I guarantee payment of all indebtedness which shall be incurred by G. R. Knight * * * in your favor for merchandise purchased by him from you at any time or times within nine months from the date hereof, provided, however, my liability shall not exceed the sum of twenty-five hundred dollars. [signed] R. B. Knight." In that suit it appears that plaintiff's credit man had a conversation with G. R. Knight, the principal debtor, in which the latter was asked to furnish a guaranty for future credit. The debtor was also told that the name of

R. B. Knight, the defendant and father of the debtor, would, among others, be acceptable. The credit man returned to his own office and prepared the contract, which was then sent to the debtor by messenger. The debtor, in turn, took the guaranty to his father and asked him to sign it. After a day or two defendant signed the instrument and returned it to his son, who delivered it to the plaintiffs. Nonsuit was granted on the ground that there was no proof of notice to the guarantor of acceptance of the guaranty. In sustaining this action the Supreme Court said that "the case therefore falls within the rule announced in Rothchild Bros. v. Lomax * * * in which is followed the doctrine announced in Davis Sewing Machine Co. v. Richards, 115 U.S. 524, 527, 6 S.Ct. 173, 175, 29 L.Ed. 480." Proceeding, the court rejected the argument that the instrument sued on was an absolute guaranty assuming an obligation in present words and, as such, requiring no notice of acceptance.

■ In the situation before us we think a request is not to be implied from the previous dealings between the bank and appellee. Although the bank had previously accepted guaranties signed by appellee, there is no evidence that upon such occasions it had failed to give notice of acceptance.

■ The further contention is made by appellant that the contract itself expressly waives notice of acceptance. The provision that "the undersigned hereby waives protest, demand, notice of nonpayment, and any and all notices of every kind, and consents to all renewals, forbearance, and extensions of time," is claimed to amount to an express waiver. With this we are unable to agree. The provision relates to matters growing out of the bank's dealings with the principal debtor— matters arising after the guaranty contract has been accepted. At best the clause is ambiguous. Being so, it must be construed against the bank which prepared it.

■ The argument is made that there is an implied waiver, grounded on the assertion that the absolute terms of the guaranty make it clear that the signer intended to be bound without the necessity of notice of acceptance. We find nothing in the Oregon cases which will support such an

---

[7] For a discussion of this and other so-called exceptions to the rule, see Davis Sewing Machine Co. v. Richards, supra; 1 Williston on Contracts, Rev. Ed., p. 197, note 6.

implication. In Balfour, Guthrie & Co. v. Knight, supra, for example, the guaranty appears on its face to have been absolute, yet the court rejected the argument that no notice was required.

Affirmed.